UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MICHAEL STEVENS,

        Petitioner,

                                          Case No. 13-13268

v.

                                          HON. MARK A. GOLDSMITH

MARY BERGHUIS,

        Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 1), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS

Petitioner David Michael Stevens, a former prisoner currently residing in Dearborn Heights, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 30, 2013 (Dkt. 1). Petitioner is challenging his Wayne County conviction for operating a vehicle while under the influence of a controlled substance, Mich. Comp. Laws § 257.625(1)(a). Petitioner was sentenced on February 15, 2011, to 3-to-15 years' imprisonment in prison. He was discharged from prison on June 18, 2015.[1]

Petitioner raises several claims regarding delays in the prosecution of his case, chemical tests on his blood sample, the sufficiency of the evidence, and his trial and appellate attorneys. See Pet. at 4-12 (Dkt. 1). Respondent Mary Berghuis urges the Court to deny the petition on the ground that the state court's decision on Petitioner's claims was not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Resp't Answer at 64 (Dkt. 14). For the reasons stated below, the Court denies the petition for writ of

_____

[1] See http://mdocweb.state.mi.us/OTIS2/otis2.aspx?.

habeas corpus, declines to issue a certificate of appealability, and grants leave to appeal in forma pauperis.

## I. BACKGROUND

### A. The Trial, Sentence, and Appeal

Petitioner was charged in Wayne County, Michigan with operating a vehicle while under the influence of a controlled substance, third offense, Mich. Comp. Laws § 257.625(1)(a), and operating a vehicle while license suspended, Mich. Comp. Laws § 257.904(3)(a). The Michigan Court of Appeals accurately summarized the facts established at Petitioner's jury trial in Wayne County Circuit Court as follows:

> This case arises out of the arrest of defendant for operating under the influence of a controlled substance. While assisting a fellow officer on a traffic stop, Officer Michael Nichols observed defendant driving directly towards his fellow officer's parked patrol car. Nichols testified that he noticed a white van which was being driven by defendant strike his fellow officer's vehicle on the rear driver's side door. Nichols got into his patrol vehicle and pursued defendant. Nichols activated his overhead lights, but defendant did not stop until a tow truck blocked defendant's vehicle. Prior to stopping, Nichols observed the vehicle which was being driven by defendant swerve on numerous occasions, strike the curb at least three times, and vary in speed from 25 to 40 miles per hour. Following the stop, Nichols testified that defendant refused to exit his vehicle and had to be forcibly removed. When Nichols questioned defendant about whether he had consumed alcohol that evening, defendant denied consuming alcohol[;] however, defendant stated that he was a diabetic and was taking two prescription medications, Vicodin and Soma. During a search of defendant's vehicle, Nichols found two pill bottles with defendant's name on each bottle: one for Vicodin and one for Soma.
>
> Nichols then arrested defendant and took him to the police station where he performed a variety of field sobriety tests. Defendant failed each test, to varying degrees. In addition, Nichols testified that defendant's speech was slurred.
>
> During trial, defendant testified that he was a Type I diabetic and that because of this disease he occasionally suffers from blackouts, memory loss and a general lack of coherency and motor skills.

2

> Defendant did not recall many, if any, of the details surrounding the events that led to his arrest. Rather, defendant testified that he recalled working a plumbing job at a church and then waking up in the Allen Park police station. He attributed this loss of memory to a significant decrease in his blood sugar.

People v. Stevens, No. 304033, 2012 WL 4512575, at *1 (Mich. Ct. App. Oct. 2, 2012) (per curiam).

On January 20, 2011, the jury found Petitioner guilty, as charged, of operating a vehicle while under the influence of a controlled substance, third offense, Mich. Comp. Laws § 257.625(1)(a), and operating a vehicle while license suspended, Mich. Comp. Laws § 257.904(3)(a). Petitioner subsequently moved for a judgment notwithstanding the verdict on the second count. At his sentencing on February 15, 2011, the trial court granted the motion and dismissed the conviction for operating a vehicle while license suspended. The court then sentenced Petitioner 3-to15 years imprisonment for operating a vehicle while under the influence of a controlled substance, third offense.

In an appeal to the Michigan Court of Appeals, Petitioner argued through counsel that he was denied his right to due process when (i) the trial court denied his motion for a continuance to file an interlocutory appeal, (ii) the trial court denied his motion for a directed verdict of acquittal, and (iii) the prosecution failed to prove all the elements of the offense beyond a reasonable doubt.

In a supplemental brief, Petitioner made the following additional arguments: (i) he was denied his right to due process when his request for an independent chemical test was denied; (ii) he was denied his right to due process when his motion to suppress a blood test was denied; (iii) his arraignment and preliminary examination were unlawfully delayed and he was denied a speedy trial; and (iv) his trial attorney was ineffective for failing to (a) object to the issues raised

3

in his brief, (b) move for an interlocutory appeal when his motion to dismiss was denied, and (c) produce medical evidence that Petitioner was diabetic.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished, <u>per curiam</u> opinion.  <u>See</u> <u>Stevens</u>, 2012 WL 4512575, at *6.  Petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal on December 26, 2012, because it was not persuaded to review the issues.  <u>See</u> <u>People v. Stevens</u>, 823 N.W.2d 570 (Mich. 2012).

### B.  The Habeas Petition, Motions to Dismiss, and Answer in Opposition

On July 24, 2013, Petitioner signed and dated his habeas petition.[2]  His grounds for relief read as follows:  (i) "Unlawful Delay of Arraignment;" (ii) "Unlawful Delay of Preliminary Exam;" (iii) "Denied Motion to Suppress Blood Test;" (iv) "Denied Request for Independent Chemical Test;" (v) "Prosecutor denied signing warrant, based on Blood Test results, . . . circuit court judge threw Blood results out.  Warrant is no longer admissible;" (vi) "Unlawful Waiver of 14-day Rule;" (vii) "Due process violation, interlocutory appeal was denied;" (viii) "Direct Verdict was denied;" (ix) "Prosecuted and convicted on evidence which failed to satisfy the burden of reasonable doubt;" (x) "Right to speedy trial;" and (xi) "Ineffective Assistance of Counsel."  Pet. at 4-12 (Dkt. 1).

The Court interprets the eleventh claim to allege that Petitioner's trial attorney:  (i) failed to object to the delay in the arraignment; (ii) performed "no investigation of waiver for prelim[inary] exam;" (iii) failed to object to the warrant; (iv) lacked a trial strategy; (v) failed to object to the delay in holding the preliminary exam; (vi) did not suggest an interlocutory appeal; (vii) was "lax and uncaring;" and (viii) failed to ask a doctor to explain the symptoms of diabetes.  <u>Id.</u> at 12.

---

[2]  The Clerk of the Court filed the petition on July 30, 2013.

On January 23, 2014, Respondent moved to dismiss the habeas petition on the basis that Petitioner had failed to exhaust state remedies for all his claims, as required by 28 U.S.C. § 2254(b)(1) (Dkt. 6). In an order dated July 23, 2014, the Court determined that Petitioner had exhausted state remedies for habeas claims one through four, six through ten, and portions of claim eleven. See 7/23/2014 Order (Dkt. 9). The Court determined that Petitioner failed to exhaust state remedies for claim five and subsections ii, iii, iv, and vii of claim eleven. The Court concluded that the habeas petition was a "mixed" petition of exhausted and unexhausted claims.

The Court nevertheless stated that a dismissal of the petition on exhaustion grounds could preclude Petitioner from raising his claims in a future habeas petition, following exhaustion of additional state remedies, due to the one-year statute of limitations, see 28 U.S.C. § 2244(d). Thus, the Court denied Respondent's motion to dismiss the petition and opted instead to give Petitioner an opportunity to seek a stay or to voluntarily dismiss the unexhausted claims. See 7/23/2014 Order (Dkt. 9).

On August 4, 2014, Petitioner filed a timely response to the Court's order in the form of a motion to dismiss his unexhausted claims. Petitioner indicated in his motion that he wished to dismiss his unexhausted claims (claim five and subsections ii, iii, iv, and vii of claim eleven) and to proceed with his exhausted claims. See Pet'r Mot. to Dismiss (Dkt. 10). The Court granted Petitioner's motion and ordered Respondent to file the relevant state court record and an answer to Petitioner's exhausted claims. See 9/30/14 Order (Dkt. 11). On January 16, 2015, Respondent filed his response to the Petition. See Resp't Answer (Dkt. 14). Petitioner did not file a reply to Respondent's answer.

## II.  STANDARD OF REVIEW

5

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted).  A "state court's determination that a claim lacks merit precludes federal habeas relief so long as

6

fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citation omitted). Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III.  ANALYSIS

**A.  The Habeas Petition**

**1.   Claims One, Two, Six, and Ten:  Delay in Arraignment and Preliminary Examination; Waiver of the 14-Day Rule; Denial of a Speedy Trial**

Petitioner alleges that he was arrested on May 15, 2010, arraigned eighty-six days later on August 9, 2010, and given a preliminary examination on October 4, 2010, sixty-three days after the arraignment. He contends that the delays in arraigning him and providing him with a preliminary examination were unlawful under state law, including the State's 14-Day Rule, and a violation of his constitutional right to due process. He also contends that his Sixth Amendment right to a speedy trial was violated.

Petitioner raised these issues in a motion to dismiss the charges, but the trial court denied his motion, stating that the prosecution needed only to commence the proceedings within 180 days and that Petitioner failed to support his allegation of prosecutorial bad faith with any evidence. 1/19/2011 Trial Tr. at 8-9 (Dkt. 16-3). The Michigan Court of Appeals subsequently concluded that the trial court did not err in denying Petitioner's motion to dismiss. Stevens, 2012 WL 4512575, at *6.

**i.  Delays in the Arraignment and Preliminary Examination**

The State's 14-Day rule provides that

> the magistrate before whom any person is arraigned on a charge of
> having committed a felony shall set a date for a probable cause
> conference to be held not less than 7 days or more than 14 days

8

> after the date of the arraignment, and a date for a preliminary examination of not less than 5 days or more than 7 days after the date of the probable cause conference.

Mich. Comp. Laws § 766.4(1).

Although the state trial court's register of actions contains an entry stating that Petitioner intended to waive the 14-Day Rule, there apparently is no formal waiver of the rule in the state court file.  See Pet. at 73 (cm/ecf page) (the trial court's letter to Petitioner stating that there is nothing in Petitioner's court file, other than the Register of Actions, that indicates he waived the 14-Day Rule).  Nevertheless, the contention that the state court violated Michigan law on the deadlines for arraignments and preliminary examinations lacks merit because "federal habeas corpus relief does not lie for errors of state law."  Lewis v. Jeffers, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).

Petitioner's constitutional claim also lacks merit.  Although the Supreme Court held in Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991), that suspects arrested without a warrant generally must receive a judicial determination of probable cause to detain the suspect within 48 hours of the arrest, the Supreme Court has not "retreat[ed] from the established rule that [an] illegal arrest or detention does not void a subsequent conviction."  Gerstein v. Pugh, 420 U.S. 103, 119 (1974).

Furthermore, Petitioner has not alleged any prejudice as a result of the delays in his arraignment and preliminary examination.  As such, his challenge to the delays does not warrant habeas corpus relief.  See Kirkland v. Maxwell, 369 F.2d 687, 688 (6th Cir. 1966) (rejecting a habeas petitioner's claim of illegal delay in arraignment because the petitioner failed to show any prejudice resulted from the delay).

### ii.  The Speedy Trial Claim

Petitioner asserts that he was denied his constitutional right to a speedy trial and that the only delays attributable to him were his motion to suppress evidence, filed on November 16, 2010, and his motion to dismiss the charges, filed on January 12, 2011.  He contends that neither of these delays overcame the prosecution's inordinate delay in bringing him to trial.

Petitioner raised the speedy trial issue at his preliminary examination, see 10/11/2010 Prelim. Examination Tr. at 3-6 (Dkt. 16-2), and at trial in his motion to dismiss the charges, see 1/19/2011 Trial Tr. at 3-9 (Dkt. 16-3).  Both the state district court and the state trial court denied his motions, and the Michigan Court of Appeals concluded on review of Petitioner's claim that the trial court did not err in denying Petitioner's motion to dismiss.  Stevens, 2012 WL 4512575, at *5-6.

### a.  Clearly Established Federal Law

The Constitution guarantees the accused in a criminal prosecution the right to a speedy trial.  U.S. Const. amend. VI.  When determining whether a petitioner's right to a speedy trial was violated, courts must consider and balance the following four factors:  (i) the length of the delay, (ii) the reason for the delay, (iii) the defendant's assertion of his right to a speedy trial, and (iv) any prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514, 530 (1972).

"The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier."   Maples v. Stegall, 427 F.3d 1020, 1026 (6th Cir. 2005).  "If the length of the delay is not 'uncommonly long,' then judicial examination ends."  Id. at 1025 (quoting Doggett v. United States, 505 U.S. 647, 652 (1992)).  In other words, "[t]he length of the delay is to some extent a triggering mechanism.  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  Barker, 407 U.S. at 530.

10

### b. Application

Petitioner alleges that he was arrested on May 15, 2010. His trial began on January 19, 2011. The delay from arrest to trial was slightly more than eight months. Although "there is authority for the proposition that a delay of as little as eight months may be considered 'presumptively prejudicial,' triggering consideration of the other <u>Barker</u> factors," <u>United States v. Chew</u>, 497 F. App'x 555, 558 (6th Cir. 2012), the Sixth Circuit stated in <u>Chew</u> that a delay of less than ten months "hardly seems 'uncommonly long.'" <u>Id.</u> In <u>Maples</u>, the Sixth Circuit stated that "[a] delay approaching one year is presumptively prejudicial and triggers application of the remaining three [<u>Barker</u>] factors." <u>Maples</u>, 427 F.3d 1026 (citing <u>Doggett</u>, 505 U.S. at 652 n.1). Thus, the delay in this case, which was four months less than a year, was not presumptively prejudicial and does not require application of the remaining <u>Barker</u> factors.

Even assuming that the eight-month delay in this case was "uncommonly long," that the delay was largely attributable to the State, and that Petitioner made an untimely motion to dismiss the charges for lack of a speedy trial, Petitioner has failed to demonstrate that he was prejudiced by the delay. He alleges that he was, but he has not said that his defense was impaired. Nor has he alleged any other basis for his claim that he was prejudiced by the delay.

Petitioner does claim that there is always a potential for lost or false memories as a result of a delay, but he has not said that this occurred in his case. "General allegations that witnesses' memories have faded are insufficient to create prejudice, at least absent extreme delay[.]" <u>Hakeem v. Beyer</u>, 990 F.2d 750, 763 (3d Cir. 1993); <u>accord</u> <u>United States v. Glasscock</u>, 583 F. Supp.2d 1272, 1278 (D. Kansas 2008) (stating that "general allegations of prejudice are insufficient to support a dismissal with prejudice" for violation of the Speedy Trial Act); <u>United States v. Castellana</u>, 461 F. Supp. 233, 240 (M.D. Fla. 1978) ("Mere general allegations of the loss of witnesses, and vague assertions of faded memories, are insufficient to establish prejudice

11

absent a strong showing that the loss is substantially related to material issues of fact in dispute."). The state court, therefore, reasonably concluded that Petitioner's right to a speedy was not violated. Accordingly, the Court concludes that habeas relief is not warranted on Petitioner's speedy trial claim.

### 2.   Claim Three:  Denial of the Motion to Suppress the Blood Test

In his third claim, Petitioner complains that the trial court denied his motion to suppress the results of blood tests. The record, however, indicates that the trial court granted his motion to suppress the results of the blood test. See 1/19/2011 Trial Tr. at 8; see also Stevens, 2012 WL 4512575, at *2 and n.1. Thus, there is no basis in fact for Petitioner's third claim.

### 3.   Claims Four and Seven:  Denial of the Request for an Independent Chemical Test and Denial of the Request for a Stay

Petitioner alleges in claim four that he was denied his right to have an independent blood test performed. In a related claim, Petitioner asserts that the trial court deprived him of due process by denying his request for a stay so that he could file an interlocutory appeal from the denial of his motion to dismiss the first count for failure to authorize an independent blood test.

The Michigan Court of Appeals determined on review of Petitioner's claims that the trial court did not abuse its discretion by denying the request for a dismissal of the first count or a stay to pursue an interlocutory appeal. The Court of Appeals concluded that Petitioner had failed to show a violation of his constitutional rights.

This Court finds no merit in Petitioner's claim, because it is based on a Michigan statute, which provides that, a person who is arrested for operating a vehicle under the influence of alcohol or a controlled substance and who submits to a chemical test of his or her blood, urine, or breath, may demand that a person of his or her own choosing administer one of the chemical tests. Mich. Comp. Laws § 257.752a(6)(b)(i). Petitioner, however, apparently did not make a

12

formal request for an independent chemical test.  1/19/2011 Trial Tr. at 5.  Even if his rights under § 257.752a(6)(b)(i) were violated, the Court may not grant a writ of habeas corpus "on the basis of a perceived error of state law."  Pulley v. Harris, 465 U.S. 37, 41 (1984).

As for the trial court's refusal to grant Petitioner's request for a stay so that he could take an interlocutory appeal from the trial court's ruling on his motion regarding an independent blood test,  continuances are "traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process[.]"  Ungar v. Sarafite, 376 U.S. 575, 589 (1964).  In deciding whether a denial of a continuance is so arbitrary as to violate due process, courts look to "the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."  Id.; see also Foley v. Parker, 488 F.3d 377, 389 (6th Cir. 2007) ("Denial of a continuance rises to the level of a constitutional violation only if it is so arbitrary as to violate due process.").

Petitioner sought a continuance to appeal the trial court's ruling on his motion about an independent blood test.  The trial court denied Petitioner's motion regarding an independent blood test because the court had already suppressed the results of the blood tests that the police obtained and because the remedy for a violation of § 257.752a(6)(b)(i) is not a dismissal of the charges against the person.  See 1/19/2011 Trial Tr. at 7-8.  Rather, the remedy for a violation of the statute is a jury instruction "that the defendant's statutory right was violated and that the jury may decide what significance to attach to this fact."  People v. Anstey, 719 N.W.2d 579, 583 (Mich. 2006).  Under the circumstances, the trial court did not abuse its discretion or deprive Petitioner of his constitutional right to due process of law by denying a continuance so that he could take an interlocutory appeal.

### 4.   Claims Eight and Nine:  Denial of the Motion for a Directed Verdict of Acquittal and Insufficient Evidence to Support the Jury's Verdict

13

Petitioner contends that the trial court should have granted his motion for a directed verdict of acquittal.  Petitioner also contends that there was insufficient evidence that his conduct was the result of his prescription drugs (Vicodin and Soma), as opposed to his Type 1 diabetes, which can allegedly cause blackouts, memory loss, lack of coherency, impaired motor skills, and slurred speech.

The motion for a directed verdict of acquittal was limited to the second count of driving while license suspended.  1/20/2011 Trial Tr. at 8-10 (Dkt. 16-4).  To the extent Petitioner is arguing that the trial court misapplied Michigan law on motions for a directed verdict of acquittal and improperly refused to enter a directed verdict, his claim is not cognizable in this federal habeas corpus proceeding.  King v. Trippett, 27 F. App'x 506, 510 (6th Cir. 2001).  Furthermore, even if the trial court erred in applying the law, the error was harmless because the trial court subsequently vacated Petitioner's conviction for driving while license suspended.

The remaining question is whether there was sufficient evidence to sustain Petitioner's conviction for operating a vehicle under the influence of a controlled substance.  The issue "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16.  Operating a motor vehicle while intoxicated

> requires proof of three elements: (1) the defendant operated a motor vehicle (2) on a highway or other place open to the general public or generally accessible to motor vehicles (3) while under the influence of liquor or a controlled substance, or a combination of the two, or with a blood alcohol content of 0.08 grams or more per 100 milliliters of blood.

People v. Hyde, 775 N.W.2d 833, 844 (Mich. Ct. App. 2009) (emphasis in original).

Police officer Michael Nichols testified at Petitioner's trial that he

14

watched as [Petitioner] drove his vehicle directly into a parked patrol car and then, without stopping or appearing to slow down, drove away. Nichols followed [Petitioner] for approximately one and a half miles through a construction zone where he witnessed [Petitioner] swear, strike the curb numerous times, and vary his speed. Office Nichols also testified that he activated his overhead lights in his marked patrol car but [Petitioner] did not stop until his route was blocked by a tow truck.

After Nichols stopped [Petitioner], he refused to exit his vehicle. [Petitioner's] speech was slurred and he told the officer that he had not consumed alcohol but he was taking prescription medications. Nichols retrieved two prescription bottles, one containing Vicodin and other containing Soma. [Petitioner] also informed Nichols that he was a diabetic, though the officer did not find any insulin in [Petitioner's] vehicle.

Following his arrest, [Petitioner] was given field sobriety tests and was unable to pass a majority of the tests. Nichols testified that [Petitioner's] speech continued to be slurred.

Stevens, 2012 WL 4512575, at *3.

In addition to Officer Nichols' testimony, Petitioner admitted at trial that he was taking three Vicodin pills a day at the time of the incident in question, 1/19/2011 Trial Tr. at 119, and the trial court instructed the jury that Vicodin was a controlled substance. 1/20/2011 Trial Tr. at 12. A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner was guilty of operating a motor vehicle while under the influence of a controlled substance.

Although Petitioner's theory that his low blood sugar caused his erratic behavior and bad driving on the day in question, the prosecutor was not obligated to "rule out every hypothesis except that of guilt beyond a reasonable doubt[.]" Jackson, 443 U.S. at 326. Furthermore,

a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

15

Id.

Therefore, the state appellate court's decision — that the prosecution presented sufficient evidence to sustain Petitioner's conviction — was not contrary to, or an unreasonable application of, Jackson.  Accordingly, Petitioner is not entitled to habeas relief on the basis of his challenge to the sufficiency of the evidence.

### 5.   Claim Eleven:  Ineffective Assistance of Counsel

In his eleventh and final claim, Petitioner alleges that his trial and appellate attorneys were ineffective.  Specifically, Petitioner contends that his trial attorney was ineffective for failing to object to the delays in his arraignment and preliminary examination, failing to move for an interlocutory appeal when his motion to dismiss the first count was denied, and failing to produce medical evidence that Petitioner was a diabetic.  Petitioner claims that his appellate attorney was ineffective for failing to raise all these claims on appeal.

The Michigan Court of Appeals adjudicated only Petitioner's claim about trial counsel's failure to move for an interlocutory appeal.  Consequently, Respondent argues that Petitioner's other claims are unexhausted.  The requirement that prisoners exhaust state remedies before raising their claims in federal court, see 28 U.S.C. § 2254(b)(1), is not jurisdictional, Castille v. Peoples, 489 U.S. 346, 349 (1989), and Petitioner's claims lack merit.  Accordingly, the Court will proceed to address the merits of Petitioner's claims about his former attorneys.

### i.   Clearly Established Federal Law

The Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), is clearly established federal law for purposes of Petitioner's ineffective-assistance-of-counsel claims.  Cullen, 563 U.S. at 189.  Under Strickland, a defendant must show that his trial attorney's "performance was deficient" and "that the deficient performance prejudiced the

16

defense." Strickland, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

The "deficient performance" prong of the Strickland, test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 111-12 (quoting Strickland, 466 U.S. at 693).

### a. Trial Counsel

Petitioner asserts that his trial attorney was ineffective for failing to object to the delays in his arraignment and preliminary examination. However, because Petitioner has not alleged any prejudice as a result of the delays, his attorney was not ineffective for failing to object to the delays.

Petitioner claims next that his trial attorney was ineffective for failing to move for an interlocutory appeal when the trial court denied his motion regarding an independent chemical test. Defense counsel did inform the trial court of Petitioner's desire for a stay of the proceedings so that he could pursue an interlocutory appeal. The trial court responded that it was

"going to deny [Petitioner's] request for an interlocutory appeal at this time."  1/19/2011 Trial Tr. at 9-10.

In light of the trial court's comment and the fact that the remedy for a violation of the statute on independent testing is an appropriate jury instruction, not a dismissal of the charge, a formal motion for an interlocutory appeal in all likelihood would have been denied.  Defense counsel was not ineffective for failing to make a futile motion.

Petitioner's final claim about trial counsel is that counsel failed to produce a doctor to explain the symptoms of diabetes.  But Petitioner merely speculates that a doctor would have testified that diabetes causes slurred speech, slow motor skills, and behavior similar to that of a drunken person.  Furthermore, "whether to call a witness and how to conduct a witness' testimony are classic questions of trial strategy that merit <u>Strickland</u> deference."  <u>Rayborn v. United States</u>, 489 F. App'x 871, 878 (6th Cir. 2012).  Stated differently,

> [t]he decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess.  Thus, counsel's decision as to whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation.

<u>Greiner v. Wells</u>, 417 F.3d 305, 323 (2d Cir. 2005).

In this case, moreover, Petitioner himself testified about the symptoms of his diabetes and the problems that he was having on the day in question.  1/19/2011 Trial Tr. at 117-118, 123. Defense counsel could have reasonably concluded that Petitioner's own testimony about the complications of his diabetes would be as effective, or more effective, than a technical explanation of diabetes from an expert witness.  The Court, therefore, concludes that defense counsel was not ineffective for failing to produce a medical doctor to explain the symptoms of diabetes.

### b.  Appellate Counsel

18

Petitioner claims that his appellate attorney was ineffective for failing to raise all his claims on appeal.  But an appellate attorney is not required to raise every non-frivolous claim requested by his or her client if counsel decides, as a matter of professional judgment, not to raise the claim.  Jones v. Barnes, 463 U.S. 745, 751 (1983).

> In fact, the process of winnowing out weaker arguments on appeal is the hallmark of effective appellate advocacy.  Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002).  To demonstrate that appellate counsel was ineffective, Petitioner must show (i) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (ii) there is a reasonable probability that he would have prevailed on appeal if his attorney had raised the issues.  Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. at 687-91, 694); Etherton v. Rivard, 800 F.3d 737, 748 (6th Cir. 2015), petition for cert. filed, No. 15-723 (U.S. Dec. 3, 2015).

The claims that appellate counsel failed to raise on appeal lack merit for the reasons given above in the Court's discussion of those claims.  Therefore, The Court declines to grant relief on Petitioner's claim about appellate counsel.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001).

### B.  Petitioner's Request for Appointment of Counsel

In a letter request filed on January 9, 2015, Petitioner asks the Court to appoint an attorney to help him with his case (Dkt. 13).  Petitioner has no constitutional right to appointment of counsel in a collateral attack on his convictions. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), and because his claims lack merit, the interests of justice do not require appointment of

19

counsel.  18 U.S.C. § 3006A(a)(2)(B).  Therefore, the Court denies Petitioner's request to appoint counsel.

### C.  Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  Id. at 336-337.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right; reasonable jurists would not conclude that Petitioner's claims deserve encouragement to proceed further.  Accordingly, a certificate of appealability is not warranted in this case.

### D.  Leave to Proceed In Forma Pauperis

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis is a lower standard than the

20

standard for certificates of appealability.  Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant in forma pauperis status if it finds that an appeal could be taken in good faith.  Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a).  "Good faith" requires a showing that the issues raised are arguable on the merits and are not frivolous; it does not require a showing of probable success on the merits.  Foster, 208 F. Supp. 2d at 765.  Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal.

## IV.  CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus (Dkt. 1), declines to issue a certificate of appealability, and grants leave to appeal in forma pauperis.  The Court further denies Petitioner's request for appointment of counsel (Dkt. 13).

SO ORDERED.


Dated:  February 23, 2016                    s/Mark A. Goldsmith
      Detroit, Michigan                    MARK A. GOLDSMITH
                                            United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 23, 2016.

                                        s/Karri Sandusky
                                        Case Manager